AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| v. | ) |
| | ) Case No.  5:18-MJ- 254 (ATB) |
| | ) |
| | ) |
| KOLONGI RICHARDSON, | ) |
| | ) |
| Defendant. | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On

or about the date(s) of 5/1/18 in the county of Onondaga in the Northern District of New York the defendant

violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) | Knowingly and intentionally distributing and possessing with intent to distribute cocaine, a Schedule II controlled substance |

This criminal complaint is based on these facts:
See attached affidavit

☒      Continued on the attached sheet.

_____
Complainant's signature

Robert C. Wiegand, Task Force Officer
_____
Printed name and title

Sworn to before me and signed in my presence.

Date:    5/24/2018
_____
Judge's signature

City and State:      Syracuse, New York

Hon. Andrew T. Baxter, U.S. Magistrate Judge
_____
Printed name and title

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

ROBERT C. WIEGAND, a Task Force Officer with the United States Drug Enforcement Administration ("the DEA"), being duly sworn, deposes and says:

1.     I am the applicant herein and I am currently assigned to Group D-54 of the Drug Enforcement Administration (hereinafter DEA).  I have been sworn as a Federal Task Force Officer (hereinafter TFO) and am deputized as a D.E.A. Agent.  I was deputized as a federal agent in April 2010, and then again in October 2015.   I am also a public servant of the kind specified in the New York State C.P.L. 690.05(1), my title being an Investigator.  I am also an Investigator with the Onondaga County District Attorney's Office.  I have been a member of the Onondaga County District Attorney's Office since 2015.  I had previously been employed by the Syracuse Police Department from 1994 to 2014, and was assigned to the Special Investigations Division from 1996 to 2014 as a Narcotics Detective.  I have submitted affidavits in the past in support of search warrants and applications for Orders authorizing the interception of wire communications.  I have arrested numerous individuals for violations of New York Penal Law Article 220 and Title 21 United States Code.  I have also participated in the execution of hundreds of search warrants for controlled substances in which controlled substances, narcotics proceeds and drug paraphernalia have been seized.  I have also participated in the execution of many eavesdropping warrants, the subject of which was the possession and sale of narcotics.  I have interviewed and worked with many confidential and reliable informants, whose reliability and veracity has been verified through prior law enforcement investigations, and whose assistance has resulted in the controlled purchases of narcotics, controlled substances and marihuana and the introduction of undercover police officers to persons who engage in the sale

1

of controlled substances. I have attended several schools and seminars, including those given by the Syracuse Police Department, the New York Division of Criminal Justice Services, and the Drug Enforcement Administration, which concern the enforcement of the laws prohibiting trafficking in narcotics and dangerous drugs, as well as the packaging and concealment of narcotics. As a result of my training and experience, I am familiar with the language, conduct and customs of people engaged in conspiracies to violate the narcotics laws of the State of New York and the United States. I have personally participated in the investigation of the offenses set forth below and as a result of my participation and my review of past and present reports made by other Law Enforcement Officers of state and local law enforcement agencies, Special Agents, and Task Force Officers of DEA, I am fully familiar with the facts and circumstances of this investigation.

2.    I make this affidavit in support of a criminal complaint charging **KOLONGI RICHARDSON** with violations of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), knowingly and intentionally distributing, and possessing with intent to distribute cocaine, a Schedule II controlled substance.

3.    I base this affidavit in part upon my personal involvement in this investigation and in part based upon information supplied by DEA, Madison County Sheriff's Office, Oneida Police Department, and other local and state law enforcement agencies. Since this affidavit is being submitted for the limited purpose of establishing probable cause to support a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts, which I believe, are necessary to establish probable cause for the complaint.

## CONTROLLED COCAINE PURCHASES FROM KOLONGI RICHARDSON

4.      On May 1, 2018, law enforcement met with a cooperating source, hereinafter referred to as CS #1,[1] for the purpose of conducting a controlled purchase of cocaine from Kolongi **RICHARDSON**.   CS #1 spoke with **RICHARDSON** on the telephone to arrange the narcotics transaction, in a call that was monitored and recorded by law enforcement agents. **RICHARDSON** and CS #1 agreed to meet at a location in Syracuse, NY.   Agents searched CS #1, and CS #1's vehicle, for money, drugs or illegal contraband – all with negative results.   I gave CS #1 a sum of United States currency, and a recording device to put on her/his person.   CS #1 then drove to the location agreed upon by **RICHARDSON**.   CS #1 was followed under surveillance by law enforcement agents.   While driving to the meeting location, CS #1 received a call from **RICHARDSON** and could be overheard on the recording device telling **RICHARDSON** how much money she/he had for the cocaine, and also stating that she/he would be arriving soon.

5.      Shortly thereafter, agents observed a 2011 maroon Buick, with a New York registration HEK-1506 (hereinafter, the Maroon Buick), parked in the parking lot of the agreed-upon location.   A records check confirmed that the Maroon Buick's HEK-1506 registration is to **Kolongi RICHARDSON**, residing at 230 Glenwood Ave, Syracuse, NY.   The Maroon Buick was backed into a parking spot directly in front of the store, enabling **RICHARDSON** to see anyone entering or exiting the parking lot.   CS #1 also pulled into the lot at this time, parking in one of the rows in front of the Maroon Buick.   CS #1 then walked to the Maroon Buick and got

---

1 CS #1 has two misdemeanor charges pending: Criminal Sale of Marihuana 5th and Endangering the Welfare of a Child less than 17.  CS#1 has no prior convictions.  CS#1 began working with law enforcement in the hope of decreasing any sentence that may be forthcoming for the two misdemeanors pending.

into the passenger side of the vehicle.  Shortly thereafter, CS #1 could be heard over the recording device getting back into her/his vehicle and was observed by surveillance leaving the parking lot.  CS #1 proceeded directly to a pre-arranged meeting location, and was followed to this location by law enforcement surveillance units. Other surveillance units followed **RICHARDSON** as **RICHARDSON** left the parking lot and drove in the direction of his residence at 230 Glenwood Avenue.  One of the surveillance officers was able to positively identify that it was **RICHARDSON** who was driving the Maroon Buick.

6.     CS #1 gave law enforcement agents two plastic bags containing a white powdery substance.  Law enforcement agents searched CS #1, and CS #1's vehicle, for any money, drugs, or illegal contraband -- all with negative results,   CS #1 stated that **RICHARSON** had the cocaine in small knotted clear bags in the center console of the Maroon Buick, and then **RICHARDSON** handed it to CS #1.  CS #1 said that he/she then gave **RICHARDSON** the money for the cocaine. I then field tested the white powdery substance utilizing a SIRCHIE Nark Cocaine ID swipe field test, and received a positive reaction for the presence of cocaine.  The cocaine had a net weight of 7.4 grams.

7.     On May 15, 2018, law enforcement agents met with CS #2[2] for the purpose of conducting another controlled purchase of cocaine from **RICHARDSON**.  CS #2 and her/his vehicle were searched for any money, drugs or illegal contraband with negative results.  CS #2 called **RICHARDSON** in the presence of law enforcement, in a recorded telephone call. **RICHARDSON** informed CS #2 that he was in "the Cuse" but did not specifically tell CS#2

---

2 CS #2 has a felony and two misdemeanor charges pending, Criminal Poss of Cont. Sub. 3rd, Crim. Poss. Of Marihuana 4th, and Operating Motor Vehicle Impaired.  CS#2 has (1) felony, (1) misdemeanor, and (2) violation convictions.  CS#2 began working with law enforcement in the hope of decreasing any sentence that may be forthcoming for the charges pending.

where to meet him at this time. I gave CS #2 an amount of United States currency to purchase the illegal narcotics. CS #2 was also given a recording device to put on her/his person, and CS #2 was instructed to drive to meet with **RICHARDSON**. Shortly thereafter, CS #2 advised law enforcement agents that the transaction with **RICHARDSON** would take place at business location in East Syracuse, NY. While driving to the meeting location, CS #2 could be heard over the recording device talking with **RICHARDSON** and could also be heard telling **RICHARDSON** how much money she/he had for the cocaine. CS #2 arrived at the meeting location, under constant law enforcement surveillance.

8.     Shortly thereafter, law enforcement surveillance observed the Maroon Buick pulling into the parking lot of the meeting location, and parking on the passenger side of CS #2's vehicle. Agents then observed CS #2 exit CS #2's vehicle and get into the passenger side of the Maroon Buick. Shortly thereafter, agents observed CS #2 exit the Maroon Buick and re-enter her/his vehicle. CS #2 then left the parking lot, and proceeded directly back to our pre-arranged meeting location. CS #2 was followed to this location by law enforcement agents. Other surveillance agents remained in the parking lot where the transaction had just taken place, and were able to positively identify **RICHARDSON** exit the Maroon Buick and walk in to a store adjacent to the parking lot.

9.     Other agents and I met CS #2 at the pre-arranged location and I recovered a plastic bag containing a white powdery substance from CS #2. Agents then searched CS #2, and CS #2's vehicle for any money, drugs, or illegal contraband – all with negative results. I then spoke with CS #2 and she/he said she/he met with **RICHARDSON** in the Maroon Buick in the parking lot. CS #2 stated that **RICHARDSON** was the only person in his vehicle, and that **RICHARSON** had the cocaine in a knotted plastic bag in his hand prior to handing it to CS #2.

5

CS #2 said that she/he then gave **RICHARDSON** the money for the cocaine and left the Maroon

Buick.   I later field tested the white powdery substance utilizing a Narco Pouch 904B cocaine

field test, and received a positive reaction for the presence of cocaine.  The cocaine had a net

weight of 6.2 grams.

## EXECUTION OF FEDERAL SEARCH WARRANT ON MAY 23, 2018

10.     On May 22, 2018, United States Magistrate Judge Andrew Baxter authorized a

search warrant for **RICHARDSON's** residence at 230 Glenwood Avenue, Syracuse, NY and for

the Maroon Buick (hereinafter, the Search Warrant).

11.     On May 23, 2018, law enforcement officers executed the Search Warrant at 230

Glenwood Avenue, Syracuse, NY.   Upon making entry, one of the officers observed

**RICHARDSON** running to a bathroom on the second floor of the residence.  The officer

immediately chased after **RICHARDSON** and found him flushing something down the toilet.

**RICHARDSON** was restrained, but officers could not retrieve what **RICHARDSON** had

flushed.

12.     The only other person in the residence was Maude RICHARDSON, who

identified herself as **RICHARDSON's** wife.  Maude stated that she owned the house.

13.     Officers then conducted a search of the residence.  On the first floor, on a table in

the kitchen, officers located five knotted plastic bags containing a white powdery substance of

suspected cocaine.  The substance had a total net weight of approximately 40 grams.  In another

baggie on the same table, officers found a white chunky substance of suspected crack cocaine.

The substance had a net weight of approximately 8 grams.  Officers used a Narco Pouch 904b

cocaine field test kit on both substances, which returned a positive test for cocaine.  Located on

the table next to the cocaine and crack were a number of additional plastic baggies, a scale with

powder residue, and a container of inositol, which is a common cutting agent for cocaine. Agents located additional plastic baggies and an inositol bottle, similar to the baggies and bottle located in the kitchen, in an upstairs bedroom.

14.     I read **RICHARDSON** his *Miranda* rights, which he indicated that he understood. I then asked him if he wished to answer my questions and he said "not at the moment." Officers ceased questioning of **RICHARDSON**. Nevertheless, **RICHARDSON** later spontaneously volunteered to another officer who had walked **RICHARDSON's** wife Maude downstairs – and not in response to any questioning – that "she has nothing to do with this." The officer said "nothing to do with what?" **RICHARDSON** gestured toward the kitchen and said "the stuff on the table is mine."

## PRIOR FELONY DRUG CONVICTIONS

15.     Your affiant has conducted a criminal history record inquiry and confirmed that **Kolongi RICHARDSON** has multiple prior convictions for a felony drug offense, which became final prior to the offenses described above, including:  (i) on December 21, 2005, Kolongi **RICHARDSON** was convicted in U.S. District Court for the Northern District of New York (Case No. 04-CR-397(DNH)) of the felony offense of conspiracy to distribute and possess with intent to distribute cocaine and cocaine base (crack), in violation of 21 U.S.C. §§ 841 & 846, and was sentenced to 108 months incarceration, followed by 4 years supervised release; and (ii) on July 16, 2012, **RICHARDSON** was convicted in Westchester County Court of the felony offense of Attempted Criminal Possession Controlled Substance in the Third Degree: Narcotic Drug Intent to Sell in violation of NY Penal Law Section 220.16(1), and was sentenced to one year imprisonment.

## CONCLUSION

16.     Based upon the above, I believe that probable cause exists that **KOLONGI**

**RICHARDSON** has violated Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), by

knowingly and intentionally distributing, and possessing with intent to distribute cocaine, a

Schedule II controlled substance.

Robert C. Wiegand
Task Force Officer
U.S. Drug Enforcement Administration

Sworn to before me this
24th day of May, 2018

Hon. Andrew T. Baxter
United States Magistrate Judge